1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

TUTUILA F. TUVALU,

11

        Plaintiff,                No. CIV S-04-1724 DFL KJM P

12
13

   vs.

JEANNE WOODFORD, et al.,        <u>ORDER AND</u>

14

        Defendants.          <u>FINDINGS AND RECOMMENDATIONS</u>

15

_____/

16

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under

17

42 U.S.C. § 1983.  He has filed  motions for access to technology services, for the appointment

18

of counsel, for the appointment of an expert witness and to compel disclosure of public records,

19

for the issuance of subpoenas and to compel discovery.  In addition, he has filed a motion for a

20

preliminary injunction.

21

I.  <u>Motion For Injunctive Relief</u> (Docket No. 58)

22

        Plaintiff seeks an injunction, restraining defendants "from denial of approval of

23

plaintiff and family access to overnight family visitation."  As he does in his complaint, plaintiff

24

challenges the denial of family visits flowing from his status as a life prisoner without a parole

25

date, complains that he cannot get a parole date without becoming an informer, and argues that

26

1

1  his relationship with his daughter is somehow different than other inmate family connections

2  because he fathered the child during a family visit.

3        A.  <u>Standards</u>

4        The legal principles applicable to a request for injunctive relief are well

5  established.  To prevail, the moving party must show either a likelihood of success on the merits

6  and the possibility of irreparable injury, or that serious questions are raised and the balance of

7  hardships tips sharply in the movant's favor.  <u>See Coalition for Economic Equity v. Wilson</u>, 122

8  F.3d 692, 700 (9th Cir. 1997); <u>Oakland Tribune, Inc. v. Chronicle Publ'g Co.</u>, 762 F.2d 1374,

9  1376 (9th Cir. 1985).  The two formulations represent two points on a sliding scale with the focal

10  point being the degree of irreparable injury shown.  <u>Oakland Tribune</u>, 762 F.2d at 1376.  "Under

11  any formulation of the test, plaintiff must demonstrate that there exists a significant threat of

12  irreparable injury."  <u>Id.</u>  In the absence of a significant showing of possible irreparable harm, the

13  court need not reach the issue of likelihood of success on the merits.  <u>Id.</u>  Speculative injury does

14  not constitute irreparable harm.  <u>See Caribbean Marine Servs. Co. v. Baldrige</u>, 844 F.2d 668, 674

15  (9th Cir. 1988); <u>Goldie's Bookstore, Inc. v. Superior Court</u>, 739 F.2d 466, 472 (9th Cir. 1984).  A

16  presently existing actual threat must be shown, although the injury need not be certain to occur.

17  <u>See Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 130-31 (1969); <u>FDIC V.</u>

18  <u>Garner</u>, 125 F.3d 1272, 1279-80 (9th Cir. 1997); <u>Caribbean Marine Servs. Co.</u>, 844 F.2d at 674.

19        When a party seeks an injunction against a state agency, "a strong factual record is

20  necessary."  <u>Thomas v. County of Los Angeles</u>, 978 F.2d 504, 508 (9th Cir. 1992).  Moreover,

21  when a party seeks an injunction that would require affirmative conduct, the facts and law must

22  clearly favor the moving party before relief is warranted.  <u>Dahl v. HEM Parmaceuticals Corp.</u>, 7

23  F.3d 1399, 1403 (9th Cir. 1993); <u>Cupolo v. Bay Area Rapid Transit</u>, 5 F.Supp.2d 1078, 1085

24  (N.D. Cal. 1997).

25  /////

26  /////

1    B. <u>Validity of the Regulation</u>

2    While it is true that a parent has a fundamental interest in maintaining his

3 relationship with his children, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 685 (9th Cir. 2001), the

4 parent's incarceration places substantial restrictions on his rights of association, even with his

5 family. <u>Overton v. Bazzetta</u>, 539 U.S. 126, 131 (2003); <u>Wirsching v. Colorado</u>, 360 F.3d 1191,

6 1199 (10th Cir. 2004). A court must "accord substantial deference to the professional judgment

7 of prison administrators" and consider four factors: whether the regulation has a rational

8 connection to a legitimate governmental interest, whether alternative means are open to the

9 inmate to exercise the right, what impact an accommodation would have on guards and other

10 inmates and prison resources, and whether there are alternatives to the regulation. <u>Overton</u>, 539

11 U.S. at 132; <u>Turner v. Safley</u>, 482 U.S. 78, 89-91 (1987). The burden is on the inmate to

12 disprove the validity of the challenged regulation. <u>Overton</u>, 539 U.S. at 132.

13    Plaintiff argues that his liberty interest in maintaining his parental relationship

14 with the child he fathered during a family visit and the harm to that bond caused by the denial of

15 family visits is a sufficient basis for the issuance of injunctive relief.

16    1. <u>Connection To Legitimate Governmental Interests</u>

17    As one California Court of Appeal has described it, the changes in the regulations

18 governing family visits, including the elimination of family visits for inmates serving life

19 sentences who do not have parole dates, were prompted by concerns "for institutional security

20 and public safety" and perhaps for "accountability for serious offenders." <u>Pro-Family Advocates</u>

21 <u>v. Gomez</u>, 46 Cal.App.4th 1674, 1684 (1996). The court went on to note that

22    [m]aintaining institutional security is a legitimate interest for
     prison officials to take into account when promulgating regulations
23    about family visits that take place in an unsupervised setting.

24 <u>Id</u>. at 1686. Plaintiff himself echoes some of these rationales and adds that the changes in

25 regulations were based on the recognition that family visitation is a privilege based on trust and

26 "that trust must be earned. . . ." Mot. at 4.

3

1    Plaintiff attacks these reasons because they fail to take into account "the private

2    interests of [the] child."  Id.  However, in considering the validity of these regulations, the child's

3    rights are not relevant.  Cf. Goodwin v. Turner, 908 F.2d 1395, 1399 (8th Cir. 1990) (rejecting

4    prisoner's claim that his wife's rights must be considered when evaluating prison regulations

5    restricting inmate procreation).

6    He also argues, at considerable length, that the only way for a life prisoner to gain

7    the trust of prison officials is to become an informer, but if plaintiff did so, he would be

8    endangering himself and his family.  Id. at 11.  This qualification does not appear in the

9    regulations, which provide in part:

10       Family visits shall not be permitted for inmates who are in any of
         the following categories: sentenced to life without the possibility of
11       parole; sentenced to life, without a parole date established by the
         Board of Prison Terms; designated Close A or Close B custody;
12       designated a condemned inmate; assigned to a reception center;
         assigned to an administrative segregation unit; assigned to a
13       security housing unit; designated "C" status; guilty of one or more
         Division A or Division B offense(s) within the last 12 months; or
14       guilty of narcotics distribution while incarcerated in state prison.

15   15 Cal. Code Regs. § 3177(b)(2).

16   Finally, plaintiff suggests that his own institutional record shows he would not use

17   the unsupervised family visit to secure alcohol or drugs and that he is not otherwise a danger.

18   Mot. at 3-4.  However, this court must examine the relationship between the governmental

19   interest and the regulation, rather than focus on the specific characteristics of the inmate subject

20   to the regulation.  See Overton, 539 U.S at 134.

21   Plaintiff has not disproved a relationship between institutional security and a

22   regulation that prevents those with serious criminal records from enjoying unsupervised visits

23   with family members.

24       2.  Alternative Means

25   Plaintiff argues that maintaining his parental relationship through expensive

26   monitored collect calls, letters subject to inspection, and regular visits with no privacy is next to

4

1   impossible.  Mot. at 19.  However, as the Supreme Court has recognized, "[a]lternatives to

2   visitation need not be ideal; . . . they need only be available"; letters and calls are sufficient

3   alternatives to restricted visits as a means of maintaining relationships.  Id. at 135.

4                       3.  Impact On Guards, Other Inmates, Allocation Of Resources

5           Plaintiff suggests that the facilities and staff are already available because other

6   inmates are involved in the family visit program.  Mot. at 20.  As the Overton court recognized,

7   retooling a visitation program might cause a "reallocation of the prison system's financial

8   resources . . . ."  Id. at 135.  Plaintiff has offered nothing but his speculation that there will be no

9   significant impact on prison resources.

10                      4.  Alternatives To The Restrictions

11          Plaintiff has not "pointed to some obvious regulatory alternative that fully

12  accommodates the asserted right while not imposing more than a *de minimus* cost to the valid

13  penological goal."  Id. at 136.  Indeed, he suggests that the only way to maintain his parental

14  relationship is through family visits.

15      C.  Procedural Due Process

16          Plaintiff suggests he will succeed in the underlying action because his liberty

17  interest in family visits was abridged without adequate procedural protections.  A liberty interest

18  arises from one of two sources: the due process clause or the laws of the state.  Kentucky

19  Department of Corrections v. Thompson, 490 U.S. 454, 460 (1989).  The federal courts have

20  routinely found no liberty interest in visits with "a particular visitor," id. at 461; in contact

21  visitation, Toussaint v. McCarthy, 801 F.2d 1080, 1113 (9th Cir. 1986); in conjugal visitation,

22  Hernandez v. Coughlin, 18 F.3d 133, 137 (2d Cir. 1994); or in family visitation.  Cooper v.

23  Garcia, 55 F.Supp.2d 1090, 1098 (S.D. Cal. 1999).  Moreover, the California Supreme Court has

24  interpreted its own laws on prison visitation and found no state-created right to family visitation.

25  In re Cummings, 30 Cal.3d 870, 873 (1982) (prison authorities "may ban overnight visits with

26  inmates altogether").  Accordingly, plaintiff has not shown the sort of likelihood of success on

1   the merits that would justify the issuance of an injunction.

2          Although plaintiff's interest in maintaining his parental relationship with his

3   daughter is understandable, this court cannot rewrite prison policy in ruling on a motion for

4   injunctive relief.

5   II.  Access To Technology Services (Docket Nos. 64 & 66)

6          The gravamen of plaintiff's complaint is that his right to maintain a parental

7   relationship with his daughter, who was conceived during a family visit, has been damaged by

8   the combination of CDCR's policy, which denies family visits to prisoners serving life terms

9   unless they have parole dates, and the purported "no parole" policy followed by successive

10  governors.  He seeks supervised access to the internet, assistance from a staff member conversant

11  with on-line research, and the authority to print material relevant to the alleged no parole policy.

12  He relies on California Code of Civil Procedure § 2017.730, which appears to authorize

13  electronic discovery in certain categories of cases.  That statute is inapplicable to this action.

14         Defendants have opposed this motion, arguing that granting the request would

15  require the defendants to bear the costs of plaintiff's litigation.[1]  The federal courts uniformly

16  have held that even an indigent, imprisoned litigant must bear his own costs of litigation.  Tabron

17  v. Grace, 6 F.3d 147, 159 (3d Cir. 1993) (no statutory authority for payment of costs of

18  deposition transcript for indigent); Tedder v. Odle, 890 F.2d 210, 211-12 (9th Cir. 1989) (no

19  authority for court to pay witness fees for indigent); Rivera v. DiSabato, 962 F.Supp. 38, 40

20  (D.N.J. 1997) (court cannot compel opposing party to provide deposition transcript to indigent

21  defendant; "plaintiff's obligation, even as an indigent litigant, to finance his own litigation

22  expenses cannot be arbitrarily thrust upon defendants").

23         If plaintiff's claim is interpreted as seeking access to additional research

24  capabilities rather than for discovery, it is nevertheless unavailing.  An inmate has a

25  _____

26         [1]  Defendants also discuss the merits of plaintiff's underlying action, which does not
    assist the court in resolving plaintiff's discovery-related request.

1  constitutionally protected right of access to the courts.  Bounds v. Smith, 430 U.S. 817, 820-21

2  (1977).   This right encompasses more than access to an adequate law library: it includes access

3  to "paper and pen to draft legal documents . . . and stamps to mail them," id. at 824-25, and to

4  photocopying services necessary to prepare the required number of copies.  Gentry v. Duckworth,

5  65 F.3d 555, 558 (7th Cir. 1995); Gluth v. Kangas, 951 F.2d 1504, 1510 (9th Cir. 1991).

6  Plaintiff has cited and the court has not found any case suggesting that an inmate's right of access

7  to the courts includes the right of access to the internet for research.   The motion will be denied.

8  III  Motion For The Appointment Of Counsel (Docket No. 84).

9          The United States Supreme Court has ruled that district courts lack authority to

10  require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist.

11  Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the court may request the

12  voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d

13  1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  In

14  the present case, the court does not find the required exceptional circumstances.  Plaintiff's

15  request for the appointment of counsel will therefore be denied.

16  IV.  Request For Appointment Of Expert Witness/Disclosure Of Public Records (Docket No. 85)

17          Plaintiff seeks the appointment of a family psychologist as an expert witness to

18  testify about the harm caused by the denial of private visits between parents and children, or, in

19  the alternative, an order compelling defense counsel to produce various documents relating to the

20  public hearing on Assembly Bill 212, so he can identify the psychologist who testified against

21  this proposal to eliminate family visits for inmates altogether.

22          The appointment of an independent expert witness under Federal Rule of

23  Evidence 706  is within a court's discretion.  Walker v. American Home Shield Long Term

24  Disability Plan, 180 F.3d 1065, 1071 (9th Cir. 1999).  Appointment may be appropriate when

25  "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the

26  evidence or decide a fact in issue. . . ."  Ledford v. Sullivan, 105 F.3d 354, 358-59 (7th Cir.

1   1997).  It appears that plaintiff is not seeking an independent expert, but rather one who will

2   advocate for his position.  The expenditure of public funds on behalf of an indigent litigant is

3   proper only when authorized by Congress.  Tedder v. Odel, 890 F.2d at 211-12.  The in forma

4   pauperis statute does not authorize the expenditure of public funds for expert witnesses.  Boring

5   v. Kozakiewicz, 833 F.2d 468, 474 (3d Cir. 1987) (no provision to pay fees for expert witnesses);

6   28 U.S.C. § 1915.  However, even if plaintiff is seeking the appointment of an independent

7   expert, the court would decline to exercise its discretion to appoint one; it does not take any

8   specialized knowledge to evaluate the stress on plaintiff's parental relationship caused by his

9   incarceration and the resulting lack of privacy.

10          Plaintiff asks the court to compel defense counsel to produce various documents

11   relating to the hearing on Assembly Bill 212, so that he may identify and contact the psychologist

12   who testified in opposition to the bill.  Plaintiff says he learned of this through a newsletter for

13   prisoners; it appears he has not taken the expedient step of contacting the publishers of the

14   newsletter for information on the psychologist.

15   IV.  Requests For The Issuance Of Subpoenas (Docket Nos. 63 & 88)

16          Plaintiff has requested that he be provided with twenty-six subpoenas duces tecum

17   forms so he may seek documents from California prisons housing life prisoners identifying life

18   prisoners approved for family visitation after the 1996 change in policy.  Plaintiff asks for

19   additional forms so he may subpoena live video footage of defendant Wilson promoting his "no

20   parole" policy from television stations.

21          Under Federal Rule of Civil Procedure 45(a)(2)(C), a subpoena may direct a

22   non-party to an action to produce documents or other tangible objects for inspection.  However, a

23   party's ability to use a subpoena duces tecum is circumscribed by the relevance standards of

24   Federal Rule of Civil Procedure 26(b)(1), Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588,

25   591 (D. Kan. 2003), and by the court's duty to ensure that a subpoena does not impose "undue

26   burden or expense on a person subject to that subpoena."  United States v. Columbia

1   <u>Broadcasting System, Inc.</u>, 666 F.2d 364 (9th Cir. 1982) (court may award costs of compliance

2   with subpoena to non-party); <u>Cantaline v. Raymark Industries, Inc.</u>, 103 F.R.D. 447, 450 (S.D.

3   Fla. 1984) (same);  Fed. R. Civ. P. 45(c)(1).  One court has found it appropriate to require an

4   indigent plaintiff to "demonstrate that he has made provision for the costs of such discovery"

5   before it would direct the Clerk to provide him with the forms for subpoenas duces tecum.

6   <u>Badman v. Stark</u>, 139 F.R.D. 601, 605 (M.D. Pa. 1991).

7          To comply with plaintiff's requests, it appears that any television station subject to

8   the subpoena would have to search its archives for specific footage and then incur the costs of

9   reproducing the material in a format accessible to plaintiff.  This would be no small task,

10  requiring the diversion of personnel and considerable cost to accomplish.  Moreover, although

11  the relevance standard of Federal Rule of Civil Procedure 26(b)(1) "has been construed broadly

12  to encompass any matter that bears on, or that reasonably could lead to other matter that could

13  bear on, any issue that is or may be in the case,"  <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S.

14  340, 351 (1978), what plaintiff seeks does not fall within the broad compass of relevance:

15  defendant Wilson's public pronouncements have little relation to the procedural due process and

16  equal protection claims of the amended complaint.

17         Plaintiff's proposed requests to the prison wardens are similarly burdensome:

18  compliance would mean a search through a large volume of records and the attendant costs of

19  reproducing those records.  Moreover, if, as plaintiff alleges, lifers who have earned family visits

20  have done so through "snitching," there might be significant safety and privacy interests

21  counseling against disclosure.

22  V.  <u>Motions  To Compel Answers To Initial Disclosure</u> (Docket Nos. 87 & 108)

23         Under Federal Rule of Civil Procedure 26(a)(1)(E)(iii), an action brought by an

24  inmate proceeding pro se is exempt from the required disclosures of Rule 26(a).

25  /////

26  /////

VI.   Motions to Compel Responses To Requests For Admission

As identified below, plaintiff has filed motions to compel defendants Woodford, Runnels, Roe, Wilson, Gomez, Terhune and Sandoval to respond to a variety of his requests for admission.

Although requests for admission under Federal Rule of Civil Procedure 36 are governed by the same relevance standards set forth in Federal Rule of Civil Procedure 26(b), such requests are not, strictly speaking, discovery devices.  Workman v. Chinchinian, 807 F.Supp. 634, 647 (E.D. Wash. 1992) (Rule 26 relevance standards apply); Misco, Inc. v. United States Steel Corporation, 784 F.2d 198, 205 (6th Cir. 1986) (not a discovery device).  Because admissions are designed to limit factual issues in the case,

> the requesting party bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification. . . . To facilitate clear and succinct responses, the facts stated within the request must be singularly, specifically, and carefully detailed.

Henry v. Champlain Enterprises, Inc., 212 F.R.D. 73, 77 (N.D.N.Y. 2003) (citations omitted).  Moreover, requests for admission should not contain "compound, conjunctive, or disjunctive . . . statements."  U.S. ex rel. Englund v. Los Angeles County, 235 F.R.D. 675, 684 (E.D. Cal. 2006).  However,

> [w]hen the purpose and significance of a request are reasonably clear, courts do not permit denials based on an overly-technical reading of the request.

Id.  Finally, requests for admission should not be used to establish "facts which are obviously in dispute," Lakehead Pipe Line Co. v. American Home Assur. Co., 177 F.R.D. 454, 458 (D. Minn. 1997), to "demand that the other party admit the truth of a legal conclusion," even if the conclusion is "attached to operative facts," or to ask the party to admit facts of which he or she has no special knowledge.  Disability Rights Council v. Wash. Metro. Area, 234 F.R.D. 1, 3 (D.C. Cir. 2006).

1    A.  Defendant Woodford (Docket No. 91)

2           Defendant Woodford has responded to requests fourteen, twenty-one, twenty-

3    seven and thirty.  Based on plaintiff's indication that a page was "missing" with regard to

4    responses to requests eight through twelve, these responses apparently were inadvertently

5    omitted from what was served on plaintiff; counsel will be directed to ensure these are provided

6    to plaintiff.

7           Many of plaintiff's requests for admission are not "relevant to the subject matter

8    involved in the action."  Fed. R. Civ. P. 6(b)(1).   In requests five, seven and eight, petitioner asks

9    about inmates in protective custody, which is not relevant to the due process and equal protection

10   claims in the lawsuit.  Request thirty-two asks Woodlford to admit that she prefers to have the

11   court "fix this problem," which also is not relevant.

12          In request four, plaintiff asks Woodford to speculate about the "common practice"

13   of officials of the Department of Corrections, which hardly calls for a simple response.

14          Requests one, three, six, thirteen, fifteen and seventeen are compound.

15          Request two, asking Woodford to admit she was aware of the policy that required

16   an inmate to earn the trust of officials before being given a family visit, and request sixteen,

17   which asks Woodford to admit it is unreasonable to expect a lifer to be an informant in order to

18   qualify for family visits, involve issues that are "obviously in dispute."

19          Requests eighteen and nineteen ask Woodford to admit she was aware of the

20   parole policies of former governors Wilson and Davis; what defendant Woodford knew about

21   such policies is not relevant nor something about which she would have special knowledge.

22          Requests twenty, twenty-two, twenty-four through twenty-six, twenty-eight and

23   twenty-nine call for legal conclusions.  Request twenty-three is vague.

24          Defendant Woodford's response to request thirty-one is inadequate; the motion to

25   compel is granted as to this request only.

26   /////

11

1    B. <u>Defendant Runnels</u> (Docket No. 92)

2    Plaintiff does not dispute defendant Runnels's responses to requests six, seven,

3    twelve, twenty-two, twenty-three and twenty-five.

4    Requests one through three concern inmates in protective custody, a subject not

5    relevant to the subject matter of the suit.   Requests eighteen and nineteen ask for defendant

6    Runnels' awareness of gubernatorial parole policy; although the policy may be relevant, plaintiff

7    has not suggested how Runnels's awareness might be similarly relevant.

8    Request nine seeks housing information for a life term inmate who received one

9    family visit, which is again not relevant.   Plaintiff argues that this might lead to further discovery,

10   but as noted above, a request for admission is not a discovery device.

11   Defendant Runnels responded to request four by admitting it and to request five

12   by attaching the emergency statement (as well as other documents), and responded to request

13   eleven by denying it.   Plaintiff's dissatisfaction with the responses is not an appropriate basis for

14   a motion to compel.  <u>Usery v. Brandel</u>, 87 F.R.D. 670, 685 (W.D. Mich. 1980) (dissatisfaction

15   with the answers is not a sufficient reason to compel further discovery).

16   In request eight, plaintiff asked Runnels to admit that a named inmate was a life

17   prisoner without an established parole date; Runnels did so admit and provided additional

18   information.   Plaintiff's claim in the motion to compel is that Runnels did not make inquiry about

19   other life prisoners who might have received family visits.   Defendant cannot use the motion to

20   compel to obtain a response to a request for admission that he did not make.

21   Although plaintiff argues that Runnels should not be allowed to rely on privilege

22   in responding to request ten, Rule 26(b)(1) specifically recognizes privilege as an appropriate

23   justification for a refusal to answer.   Moreover, the informer's privilege applies in civil, as well

24   as criminal proceedings.  <u>Holman v. Cayce</u>, 873 F.2d 944, 946 (6th Cir. 1989); <u>Cate v. Reynolds</u>,

25   138 F.R.D. 95, 99 (E.D. Tenn. 1991) (prison informant).

26   /////

12

1    Requests thirteen, fifteen and seventeen ask defendant Runnels to admit, in

2  essence, that informers were rewarded with family visits even though they were not otherwise

3  eligible for them; whether such a policy exists is disputed in this litigation.  Similarly, requests

4  twenty and twenty-one ask for admissions concerning the rationality of denying family visits to

5  life prisoners without parole dates; this, too, is at issue in this case.

6    Requests fourteen and twenty-four ask for a legal conclusion, while request

7  sixteen asks a question that cannot be answered with a simple "admit or deny."

8    C.  <u>Defendant Terhune</u> (Docket No. 112)

9    Plaintiff does not contest defendant Terhune's answers to requests one through

10  seven or nineteen.

11    Requests eight through fourteen, twenty-six and twenty-seven concern housing for

12  release of and violence against inmates and housing for gang members who had been in

13  protective custody; as noted above, this is not relevant to this suit.  Moreover, it appears that

14  plaintiff is seeking to use these requests as a discovery device, which is not permissible.

15    Request fifteen asks defendant to admit that it is dangerous to be an informant in

16  prison; this is not susceptible of a simple "admit or deny."

17    Requests sixteen and seventeen involve the alleged policy requiring a life inmate

18  to earn officials' trust before being granted family visits; that such a policy exists is disputed in

19  this action.

20    Requests eighteen, twenty-two, twenty-eight and twenty-nine ask defendant

21  Terhune for a legal conclusion divorced from the facts of this case.

22    Defendant Terhune has appropriately responded to request twenty; plaintiff's

23  dissatisfaction with the response does not support the motion to compel.

24    Request twenty-one asks Terhune to admit he could have sought legal advice in

25  ruling on plaintiff's grievance; this is not relevant, as defendant Terhune's response to a

26  grievance is not at issue in this action.

1        Defendant Terhune's responses to requests twenty-three through twenty-five are

2   insufficient, for although Terhune claims he lacks sufficient knowledge to respond, he has not

3   stated that he has made reasonable inquiry, as required by Rule 36 (a).  Englund, 235 F.R.D. at

4   684.  He will be permitted to file amended responses.

5        Requests thirty through thirty-two concern facts "which are obviously in dispute."

6       D.  Defendant Wilson (Docket No. 114)

7        Many of plaintiff's requests for admission put to defendant Wilson seem to be

8   interrogatories in disguise, which is an improper use of Rule 36 requests.  Misco, Inc., 784 F.2d

9   at 205.  Many others are simply not relevant to the subject of this lawsuit and seemed designed to

10  harass defendant Wilson, which is also improper.  Wigler v. Electronic Data Systems Corp., 108

11  F.R.D. 204, 206-07 (D. Md. 1985).

12       Requests one through thirteen and sixteen, eighteen, nineteen, twenty-two,

13  twenty-three, twenty-five through twenty-seven and forty are not relevant to this litigation.

14       Requests seventeen, twenty and twenty-eight through thirty ask defendant Wilson

15  to admit to legal conclusions.

16       Request twenty-one is too vague to be answered with a simple admit or deny.

17       Requests thirty-two through thirty-six, thirty-nine and forty-one concern facts

18  "obviously in dispute."

19       Requests thirty-seven and thirty-eight ask defendant Wilson to speculate as to the

20  state of mind of parole officials and institutional officials and are therefore improper.

21       Requests fourteen, fifteen, twenty-four and thirty-one are appropriate; defendant

22  Wilson will be given an opportunity to provide amended responses.

23      E.  Defendant Roe (Docket No. 111)

24       Plaintiff does not challenge defendant Roe's response to requests one through

25  four, nineteen and twenty-five.

26  /////

14

1      Defendant Roe fully responded to request five; plaintiff's dissatisfaction with the

2 answer is not a reason to compel further discovery.

3      Requests six, seven, eight through eighteen,  twenty-two, twenty-six and twenty-

4 seven seek information that is not relevant; moreover, plaintiff's claim that the information

5 requested in numbers six and seven should be disclosed "in the interest of the general public"

6 shows he is using these requests for admission as a discovery device, which is improper.

7      Requests twenty, twenty-four, twenty-eight and twenty-nine ask defendant Roe to

8 admit to a legal conclusion unconnected to this litigation, as there is no allegation that plaintiff

9 was denied family visits because he was not deemed a parent or was denied parole because he

10 lacked strong family ties.

11      Requests twenty-one and twenty-three ask defendant Roe to admit facts obviously

12 in dispute in this litigation.

13      G.  <u>Defendant Gomez</u> (Docket No. 112)

14      Plaintiff has no objection to the responses to requests seven, nine, ten, nineteen

15 through twenty-four and twenty-eight through thirty.

16      Request one, asking defendant Gomez to admit he was aware that defendant

17 Wilson publicly advocated revoking family visiting is not relevant.  Requests eight, eleven

18 through eighteen, twenty-five and twenty-six are not relevant.

19      Requests three, five, six and thirty-two ask for a legal conclusion.

20      Request four is compound.

21      Defendant Gomez responded to requests twenty-seven and thirty-four; plaintiff's

22 dissatisfaction with these answers is not a basis for a motion to compel.

23      Requests thirty-one and thirty-three are in dispute in this litigation.

24      Defendant Gomez has said that he lacks sufficient knowledge to respond to

25 requests thirty-five and thirty-six, but has not stated that he has made reasonable inquiry, as

26 required by Rule 36(a).  He will be given an opportunity to provide an amended response.

1        H.  <u>Defendant Sandoval</u> (Docket No. 109)

2            Defendant argues that the motion to compel was filed after the cut-off date for

3   such motions as established by the scheduling order of April 12, 2006.  This order was issued

4   before defendant Sandoval was served, however, and established motion dates based on the

5   group of defendants served earlier.  It would be inequitable to enforce the deadlines against

6   defendant Sandoval, who did not answer the complaint until August 2, 2006.  Nevertheless,

7   plaintiff's motion to compel is without merit.

8            Requests one, eight, nine, sixteen, twenty-four, twenty-five, twenty-seven and

9   thirty-eight through forty-two are not relevant and appear to be designed for discovery purposes,

10  which is improper.

11           Plaintiff claims that the answers to requests thirteen and fourteen contradict each

12  other and therefore are in bad faith; he is incorrect.  In response to request thirteen, defendant

13  Sandoval denied that he was aware of all parole-related decisions when he was Secretary of the

14  Adult and Youth Authority; in response to request fourteen, he said he was unable to admit or

15  deny he was aware of any revocations of parole dates previously approved by former Governor

16  Wilson unless the particular parole decision was identified.  Because the request did not provide

17  the proper context, the failure to admit or deny was proper.

18           Defendant Sandoval properly responded to request seventeen.

19           Plaintiff has reformulated request twenty-six, which was vague, and asks for a

20  response to the request as recast; this is not proper.

21           Requests twenty-nine, thirty-four and thirty-five ask for legal conclusions.

22           Request thirty-six, which asks defendant Sandoval to admit or deny an opinion

23  about reasonable state parole policy, hardly calls for a simple admit or deny.

24  /////

25  /////

26  /////

16

VII.  Motions To Compel Answers To Interrogatories

A.  Defendant Woodford (Docket No. 90)

Plaintiff does not object to defendant Woodford's responses to interrogatories eight and nine.

Interrogatories one and two are incomprehensible and defendant Woodford was under no obligation to attempt to discern their meaning so as to supply an answer.  Rucker v. Wabash Railroad Company, 418 F.2d 146, 154 (7th Cir. 1969).

Interrogatory three bears on issues in the case and should be answered.

Interrogatories four through six, relating to housing of gang members and others removed from general population and reintegrating such prisoners into general population do not relate to or do not appear to lead to information that may bear on "any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. at 351.

Defendant Woodford's response to interrogatory seven is responsive; plaintiff's dissatisfaction with the answer does not render it unresponsive.

B.  Defendant Gomez (Docket No. 115)

Interrogatories one, three and four are not designed to lead to information that bears on any issue in the case.

Defendant Gomez's answer to interrogatory two is not complete, for it attaches only the written emergency statement supporting the change in family visiting policy, which includes the statement that "family visiting is a privilege that must be earned; because it is unsupervised, it is a privilege based on trust, and that trust must also be earned." See Gomez Interrogator Responses, Attach. A at 2216.  The interrogatory asked for information about public explanations, if any, of this provision.

Interrogatory five seeks information on defendant Wilson's participation in the process leading to the modification of the family visit program; interrogatory eight asks for information about the establishment of the alleged "no parole policy."  Defendant Gomez

1  objected on the ground that the request sought privileged official information; plaintiff argues

2  that state evidentiary privileges do not apply in federal court.

3          The federal courts recognize a privilege for the deliberative process if the

4  document or information sought was generated or covers the period before the adoption of an

5  agency's policy or decision and the document or information sought is deliberative in nature,

6  containing opinions, recommendations or advice about agency policies.  Federal Trade

7  Commission v. Warner Communications, 742 F.2d 1156, 1161 (9th Cir. 1984).  This privilege

8  covers the information sought in interrogatories five and eight.

9          Interrogatory six is not covered by the deliberative process privilege, for it asks

10  for the names of people attending the meetings.  Nevertheless, it is not likely to lead to the

11  discovery of relevant evidence: questions to these participants about the formulation of policy at

12  those meetings would call for privileged information.

13          Although defendant Gomez has answered interrogatory seven, the question was

14  directed to the purpose behind the original family visitation policy, not the policy as changed in

15  1996.  He will be directed to respond to this interrogatory.  Similarly, Gomez's objection to

16  interrogatory nine is not appropriate and he is directed to respond to this one as well.

17          Despite plaintiff's characterization, defendant Gomez answered interrogatory ten;

18  interrogatory eleven is incomprehensible.

19          C.  Defendant Runnels (Docket No. 92)

20          Defense counsel notes he has provided a complete copy of defendant Runnels'

21  replies to the interrogatories as an exhibit to the motion for summary judgment; plaintiff's

22  objection that pages three and four were missing has thus been mooted.

23          Plaintiff objects to the response to interrogatory one because a portion of the

24  response is not supported by the documents offered in support of it.  Specifically, defendant

25  Runnels explains the resolution of the grievance plaintiff filed about family visits and notes that

26  "a classification committee had noted on December 16, 2001, that Tuvalu had a disciplinary

offense that barred contact visits at that time." The Director's Level Appeal Decision, attached to the interrogatories, says only that plaintiff had been convicted of a disciplinary offense, but does not include the caveat that he was thereby prevented from having contact visits. The answer should be amended to reflect this.

Plaintiff also appears to ask the court to direct CDCR to change the Director's Level Appeal to show that by the time the appeal was decided, he had a job and was no longer on the waiting list as noted in the document. The court will not direct defendants to change the document in question.

VIII.   Scheduling Order

In light of the pending motion for summary judgment, the remaining dates in the scheduling order of April 12, 2006, are hereby vacated, to be reset, if necessary, following the resolution of that motion.

IT IS HEREBY ORDERED:

1. The motions for access to technology services (Docket Nos. 64 & 66) are denied.

2. The motion for the appointment of counsel (Docket No. 84) is denied.

3. The motion for appointment of an expert witness and the disclosure of public records (Docket No. 85) is denied.

4. The requests for the issuance of subpoenas (Docket Nos. 63 & 88) are denied.

5. The motions to compel initial disclosures (Docket Nos. 87 & 108) are denied.

6. The motion to compel defendant Woodford to respond to request for admission (Docket No. 91) is granted as to requests eight through twelve and thirty-one and denied in all other respects.   The amended response is due within thirty days of the date of this order.

7. The motion to compel defendant Runnels to respond to requests for admission (Docket No. 92) is denied.

/////

8.  The motion to compel defendant Terhune to respond to requests for admission (Docket No. 112) is granted as to requests twenty-three through twenty-five but denied in all other respects.  Amended answers are due within thirty days of the date of this order.

9.  The motion to compel defendant Wilson to respond to requests for admission (Docket No. 114) is granted as to requests fourteen, fifteen, twenty-four and thirty-one and denied in all other respects.  Amended answers are due within thirty days of the date of this order.

10.  The motion to compel defendant Roe to respond to requests for admission (Docket No. 111)  is denied.

11.  The motion to compel defendant Gomez to respond to requests for admission (Docket No. 113) is granted as to requests thirty-five and thirty-six only and is denied in all other respects.  Amended answers are due within thirty days of the date of this order.

12.  The motion to compel defendant Sandoval to respond to requests for admission (Docket No. 109) is denied.

13.  The motion to compel defendant Woodford to answer interrogatories (Docket No. 90) is granted as to interrogatory three and denied in all other respects.  Amended answers are due within thirty days of the date of this order.

14.  The motion to compel defendant Gomez to answer interrogatories (Docket No. 115) is granted as to interrogatories two, seven and nine and denied in all other respects. Amended answers are due within thirty days of the date of this order.

15.  The motion to compel defendant Runnels to answer interrogatories (Docket No. 92) is granted only as to the answer to interrogatory two itself, but not as to the documents supporting that answer.  The amended answer is due within thirty days of the date of this order.

16.  The dates for pretrial statements, pretrial conference and trial in the scheduling order of April 12, 2006 are hereby vacated.

/////

1    IT IS HEREBY RECOMMENDED that plaintiff's motion for injunctive relief

2  (Docket No. 58) be denied.

3    These findings and recommendations are submitted to the United States District

4  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

5  days after being served with these findings and recommendations, any party may file written

6  objections with the court and serve a copy on all parties.  Such a document should be captioned

7  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

8  shall be served and filed within ten days after service of the objections.  The parties are advised

9  that failure to file objections within the specified time may waive the right to appeal the District

10  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11  DATED:  November 2, 2006.

12

13  _____

UNITED STATES MAGISTRATE JUDGE

14

15

16

17  2
tuva1724.mots

18

19

20

21

22

23

24

25

26